IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| **JACK ABBOT GREBE, JR.** | § | |
| Petitioner, | § | |
| | § | |
| v. | § | B-02cv58 |
| | § | |
| **UNITED STATES OF AMERICA,** | § | |
| Respondent. | § | |

## ORDER

BE IT REMEMBERED that on September ___6___, 2002, the Court **DENIED** Petitioner's Motion to Vacate, Set Aside or Correct Sentence Pursuant to 28 United States Code Section 2255 [Dkt. No. 1]. The United States has not filed a response to Petitioner's Motion, which was filed on March 27, 2002.

Background

The facts of this case, briefly summarized from the Presentence Investigation Report [Dkt. No. 1 Ex. B], involve Petitioner's involvement in the Republic of Texas, a group which discussed a plan to use toxin-coated cactus thorns propelled from converted cigarette lighters to injure and eventually kill certain members of the United States Government. On June 12, 1998, the group, at Petitioner's direction, sent copies of its "Declaration of War" via e-mail to six federal law enforcement agents, including the Drug Enforcement Agency.

Petitioner and two other men, one of whom was a government informant, decided during a discussion on June 24, 1998, which was monitored by the FBI, that a Cameron County Court-at-Law Judge, Magdalia Lopez, would be their first target. One of the men suggested that she be infected with rabies. In the same discussion, they contemplated various ways in which to produce botulism, and one of the members stated that he had purchased the items necessary to make the delivery device.

On June 26, 1998, the three men met again and sent threatening e-mails to employees and families of the President of the United States; the Bureau of Alcohol, Tobacco and Firearms Federal Bureau of Investigation; the Drug Enforcement

Administration; the Internal Revenue Service; the United States Secret Service; and the United States Customs Service. All of the e-mails contained the same message:

> Dear (Designated Agency):
>
> Your (Designated Agency) employees and their families have been targeted for destruction by revenge. We the people are extremely mad and will not accept the inequities any longer. Non-tracable (sic) personal delivery systems have been developed to inject bacteria and/or viruses for the purpose of killing, maiming, and causing great suffering. Warn all concerned so that they may protect themselves and be made aware of this threat to themselves and their family (sic). Good luck!

Four days after these e-mails were sent, members of the group, including Petitioner, were arrested pursuant to warrants.

Petitioner was charged with eight counts in a superseding indictment on August 8, 1998. Count One charged conspiracy to use and attempt to use a weapon of mass destruction in violation of 18 U.S.C. §2332a(a)(2) and c(2)(c). Counts Two through Eight charged threatening to use and attempt to use a weapon of mass destruction in violation of 18 U.S.C. §2332a(a)(2) and c(2)(c). On October 29, 1998, Petitioner was convicted by a jury of Counts Five and Six only, Threatening to Use A Weapon of Mass Destruction.

The Presentence Investigation Report recommended the following offense level calculation:

| | |
|---|---|
| Base offense level (using §2A6.1) | 12 |
| §2A6.1 (b)(1) (involving conduct evidencing intent to carry out the threat) | +6 |
| §3A1.2(a) (official victims) | +3 |
| §3A1.4(a) (promote a federal crime of terrorism) | +12 |
| Total | 33 |

The Report recommended a combined adjusted offense level of 35 for the multiple count adjustment, and a criminal history category of VI pursuant to U.S.S.G. 3A1.4. These recommendations resulted in a guideline range of 292 to 365 months imprisonment.

At sentencing, Petitioner's counsel argued that none of the sentencing enhancements were applicable to Petitioner. He argued that §3A1.4(a) did not apply because Petitioner's conviction did not involve a weapon of mass destruction. In that alternative, he argued for a downward departure due to the Government's conduct in promoting and manipulating the offense. He further argued that §2A6.1(b)(1) enhancement did not apply because Petitioner had no intent to carry out the offense. He last argued that §3A1.2(a) enhancement was inappropriate because the guideline does not apply when the victim is an organization, agency or government. The Court held that each enhancement did apply, and, after denying a motion for downward departure, sentenced Petitioner to 292 months imprisonment on each count to run concurrently.

Petitioner appealed to the Fifth Circuit Court of Appeals in February 1999. On appeal, he raised the following issues: 1) whether the Government's conduct constituted entrapment as a matter of law; 2) whether the trial court failed to properly charge the jury on the issue of the effect of interstate commerce of their acts; 3) whether there was sufficient evidence to sustain the jury's verdict as to the question of unlawful activity; 4) whether the evidence was insufficient to sustain the jury's verdict because the superseding indictment failed to charge an essential element of the offense; 5) whether the government made improper comments during final argument; 6) whether the evidence was sufficient to sustain the jury's verdict regarding the interstate commerce element; 7) whether the trail court erred in refusing to charge the jury on spoilation; and 8) whether the trial court erred in admitting the government's expert testimony. Counsel did not raise an issue regarding the calculation of the sentence. The appeal was denied on July 31, 2000, and Petitioner's subsequent Writ of Certiorari was also denied by the Supreme Court of the United States on April 10, 2001.

Petitioner here seeks to collaterally attack his conviction on two grounds. First, he states that his counsel was ineffective on appeal by failing to "raise viable issues concerning the calculation of [Petitioner's] offense level." Second, he argues that the Apprendi case, in which the United States Supreme Court announced the rule that any enhancement of sentence beyond the statutory maximum must be presented to the

defendant through the indictment and proved beyond a reasonable doubt, should be expanded to include a scenario in which the statutory maximum has not been exceeded.  See Apprendi v. New Jersey, 530 U.S. 466 (2000).

I       Ineffective Assistance of Counsel on Appeal

Petitioner argues that his appellate counsel was ineffective under the Sixth Amendment of the United States Constitution for failing to raise issues concerning the calculation of Petitioner's offense level.  To show that he received constitutionally ineffective representation, Petitioner must show 1) that counsel's performance on appeal fell below an objective standard of reasonableness, and that 2) a "reasonable probability" that but for counsel's errors, the results of the proceeding would have been different. See Strickland v. Washington, 466 U.S. 668, 688 (1984).  A "reasonable probability is one sufficient to undermine confidence in the outcome." id.  The test for establishing ineffective appellate counsel is the same as for trial counsel.  Smith v. Robbins, 528 U.S. 259 (2000).

1.      The §3A1.4 Enhancement

U.S.S.G. §3A1.4 provides for enhancement of twelve levels or a minimum offense level of 32 if the offense underlying the conviction is "a felony that involved, or was intended to promote, a federal crime of terrorism."  The Section further calls for criminal History Category VI, regardless of the defendant's criminal history.   Under 18 U.S.C.A. §2332b(g)(5), a federal crime of terrorism is defined as one which is a) calculated to influence or affect the conduct of government or to retaliate against government conduct; and b) if the offense is pursuant to §2332a, it must be related to the use of a weapon of mass destruction.

Under 18 U.S.C. § 2332a, a person who "without lawful authority, uses, threatens, or attempts or conspires to use, a weapon of mass destruction . . . including any biological agent, toxin or vector . . . against any person within the United States . . . shall be imprisoned . . ." Id. "Biological agent," and "toxin" are defined at 18 U.S.C. §178, as:

4

> (1) the term "biological agent" means any microorganism, virus, infectious substance, or biological product that may be engineered as a result of biotechnology, or any naturally occurring or bioengineered component of any such microorganism, virus, infectious substance, or biological product, capable of causing-
> > a) death, disease, or other biological malfunction in a human, an animal, a plant, or another living organism;
> > b) deterioration of food, water, equipment, supplies or material of any kind; or
> > c) deleterious alteration of the environment
>
> (2) the term "toxin means the toxic material of plants, animals, microorganisms, viruses, fungi, or infectious substances, or a recombinant molecule, whatever its origin or method of production, including
> > (a) any poisonous substance or biological product that may be engineered as a result of biotechnology produced by a living organism; or
> > (b) any poisonous isomer or biological product, homolog, or derivative of any such a substance

Petitioner first argues that the crimes of which he was convicted do not meet the definition for two reasons.

First, he argues, his conviction did not relate to a "weapon of mass destruction." Rather, it consisted only of "discussions of a fanciful plan to use a Bic lighter to shoot cactus needles contaminated with some sort of poison at unsuspecting individuals" [Dkt. No. 1 at 5]. However, the discussions within the group contemplated exactly the sort of weapons defined above. According to the presentence report [Dkt. No. 1 at 5], there was evidence that Petitioner contemplated using rabies and botulism, which certainly fall within the examples of weapons of mass destruction defined above.

Although there was no evidence that the device was already in existence, certainly this fact alone does not render it "fanciful." According to the presentence report [Dkt. No. 1 Ex. B], there were detailed discussions about how such a device would work, the advantages of the untraceability of cactus thorns, and a claim that items had been purchased toward its manufacture. Moreover, nowhere in the statute is there any requirement that the weapon be in existence.

Petitioner next argues that the offense was not related to the use of such a weapon, only its threatened use. However, Petitioner's actions fall within the clear language of the statute. 18 U.S.C. § 2332a expressly includes a threat to use a

weapon of mass destruction. Therefore, for purposes of 18 U.S.C.A. §2332b(g)(5), an offense "related to" the use of a weapon of mass destruction includes a threat to use a weapon of mass destruction. Therefore, a threat to use a weapon of mass destruction is sufficient to trigger the enhancement. For these reasons, Petitioner's argument fails.

2.   The §2A6.1(b)(1) Enhancement

Petitioner next argues that the §2A6.1(b)(1) enhancement was inapplicable because there was no evidence that he had any intent to carry out his threat, and that appellate counsel's failure to raise this argument was objectively unreasonable, rendering the representation constitutionally ineffective.

U.S.S.G. 2A6.1(b)(1) states "[i]f the offense involved any conduct evidencing an intent to carry out such threat, increase by 6 levels." Id. Petitioner cites United States v. Goynes, 175 F.3d 350 (5th Cir. 1999) for the proposition that threats alone will not trigger the enhancement when the underlying offense is the threat itself. While the Court agrees with Petitioner's reading of that case, it is distinguishable from the one at bar. In Goynes, the Petitioner, acting alone, mailed threatening letters to two people. In the letters, Goynes, a Satan worshiper, made "rather ridiculous claims that he was going to marshal the forces of evil and satanic demons." Id. at 352. The court vacated the sentence, holding that: "Goynes did not purchase a weapon or ammunition, travel to the victim's home or city, strike the victim or do any other clearly recognizable overt act that would be considered conduct evidencing an intent to carry out his threat." Id. at 355.

Here, by contrast, there was testimony that Petitioner was present at the meeting where he asked questions about using the internet without leaving a trail, where details of the delivery device were discussed, and where he was informed that one of the members had purchased the items necessary to make the delivery device. Most importantly, those present discussed who their targets would be and what would be the most expedient manner to kill that person. Certainly these overt acts evidence and intent to carry out the threats. Petitioner's argument therefore fails.

Because the trial court's enhancement of Petitioner's sentence was proper under

both §2A6.1(b)(1) and §3A1.4, and the result of the proceeding would not have been different had Petitioner's counsel argued against the enhancements, the Court holds that Petitioner's appellate counsel was not ineffective as a matter of law.

II   Apprendi

Petitioner concedes that "Apprendi has not yet been held to apply to enhancements under the Federal Sentencing Guidelines when the statutory maximum sentence has not been exceeded." [Dkt. No. 1 at 11]. The Petitioner asks the Court to extend the majority opinion which states, "other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Apprendi, 530 U.S. 466 at 488. Petitioner asks the Court to adopt instead Justice Thomas' concurring opinion, joined in part by Justice Scalia, which concludes that the majority did not go far enough, see id. at 498 ("the Constitution requires a broader rule than the Court adopts.") (Thomas, J. concurring). Justice Thomas himself acknowledges, however, that his view is not the majority rule. The Court therefore adopts a plain reading of Apprendi, as it is required to do.

For the reasons stated above, Petitioner's Motion to Vacate is hereby **DENIED**.

DONE this ____6th____ day of September, 2002, at Brownsville, Texas.

Hilda G. Tagle
United States District Judge